IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:25-00016-KD-MU |
| | ) |
| TRANS UNION LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Plaintiff David Miller's motion for leave to amend complaint (doc. 9), Defendant Trans Union LLC's response (doc. 14) and Miller's reply (doc. 15). Upon consideration, and for the reasons set forth herein, the motion is GRANTED. Accordingly, Miller shall file his First Amended Complaint on or before September 12, 2025, and Trans Union shall file its answer or otherwise respond on or before September 19, 2025. The motion to dismiss the original complaint (doc. 5) is dismissed as MOOT.

I. Background[1]

In late December 2022, Miller negotiated the purchase of a Ram truck from Dilligaf Enterprises, LLC, d/b/a Jason Pilger Chrysler Dodge Jeep Ram. Dilligaf's employee arranged financing with PNC Bank. For multiple reasons, including an increase in price and an alleged misrepresentation of the mileage, Miller refused to take possession of the truck. He notified PNC Bank that he did not purchase the truck and did not take possession. In March 2023, PNC reported the account as delinquent to the consumer reporting agencies, including Trans Union. In

---

[1] The relevant background is taken from the original Complaint (doc. 1-2) and the proposed First Amended Complaint (doc. 9-1).

June 2023, Miller made a formal Demand for Arbitration with Dilligaf and PNC.

In June 2024, Miller reviewed his credit reports. He found the information regarding the PNC financing which he considered inaccurate, incomplete, misleading, and fraudulent. Miller also found an alleged unauthorized credit inquiry by NCC Brewbaker Chrysler DO.

After attempts to resolve the dispute directly with PNC and Dilligaf, Miller mailed a dispute letter to Trans Union on or about July 8, 2024, and asked it to reinvestigate and "delete the disputed items/accounts" (doc. 1-2, p. 23-24). Among other documents in support, Miller provided the case number with the American Arbitration Association and attached a copy of the Demand for Arbitration (Id., p. 25-37). Miller also requested a reinvestigation and deletion of Brewbaker's unauthorized credit inquiry (Id., p. 23-24).

Trans Union conducted a reinvestigation. Miller alleges the reinvestigation was unreasonable because of Trans Union's multiple failures, and that a reasonable investigation would have resulted in deleting the inaccurate PNC account from his credit report (Id., p. 8).

On or around July 21, 2024, Trans Union received notice from Experian that the PNC account was in dispute for fraud or identity theft (doc. 9-1, p. 7). On or around August 2, 2024, PNC submitted an "Automated Universal Data Form" which instructed Trans Union to delete the account, but Trans Union did not do so. (doc. 9-1, p. 40).

On or around August 2, 2024, Trans Union completed its reinvestigation, and Miller received a copy of the result. Miller alleges that Trans Union made the PNC account more incomplete by removing the account history and verifying the inaccurate and incomplete account" despite clear notice of the dispute between Miller and PNC and Dilligaf. Trans Union did not mark the account as in dispute (doc. 1-2, p. 9).

On or around August 21, 2024, PNC again requested that Trans Union delete the account.

(doc. 9-1, p. 54). Eventually, Trans Union deleted the PNC Bank account but did not address the unauthorized inquiry which Miller disputed (doc. 9, p. 4).

On December 8, 2024, Miller filed his complaint in the Circuit Court of Marengo County, Alabama, alleging claims pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq*. Specifically, negligent and willful noncompliance with 15 U.S.C. § 1681i - "Procedure in case of disputed accuracy", which sets forth the consumer reporting agencies duty to reinvestigate and modify inaccurate information in a credit file (Counts One and Two), and negligent and willful noncompliance with 15 U.S.C. § 1681e - "Compliance procedures" - subsection (b), - "Accuracy of report", which sets forth the consumer reporting agencies duty to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" (Counts Three and Four) (doc. 1-2). Miller attached a copy of the Demand for Arbitration along with other exhibits, including his July 8, 2024 letter to Trans Union (Id.)

On January 10, 2025, Trans Union removed the action (doc. 1.) On January 16, 2025, Trans Union filed its motion to dismiss (doc. 5). Miller filed his response (doc. 7) and Trans Union filed its reply (doc. 8).

On July 2, 2025, Miller filed his motion for leave to amend the complaint (doc. 9) and proposed First Amended Complaint (doc. 9-1). Miller argues that leave to amend should be granted because his proposed First Amended Complaint states a claim for relief that is plausible on its face as required by federal pleading standards. He also argues that the proposed First Amended Complaint contains factual allegations that are supported by newly discovered evidence.

Later, that same day, the Magistrate Judge entered a report and recommendation to grant

Trans Union's motion to dismiss as to Miller's claims regarding PNC financing transaction (doc. 10).  The Magistrate Judge found that "as to Trans Union's reporting of the PNC account, Miller has failed to plead an actionable FCRA claim because the alleged inaccuracy is not 'objectively and readily verifiable.'" (doc. 10, p. 6) (quoting Holden v. Holiday Inn Club Vacations, Inc., 98 F. 4th 1359, 1363 (11th Cir. 2024)).  The Magistrate Judge also found that Trans Union had not moved to dismiss Miller's claims regarding the unauthorized inquiry by Brewbaker and made no report and recommendation as to same (Id.).

Upon notice of the motion for leave to amend, the report and recommendation was withdrawn (doc. 12)

II. Analysis

At this stage in the litigation, and absent Trans Union's written consent, Rule 15(a)(2) instructs the Court that it "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[.]" City of Miami v. Bank of America Corp., 800 F.3d 1262, 1286 (11th Cir. 2015) (citation omitted). The Court "may consider several factors when deciding whether to grant a motion to amend, including 'undue delay, bad faith or dilatory motive [on the part of the movant], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340–1341 (11th Cir. 2014) (citing Equity Lifestyle Properties, Inc. v. Florida Mowing & Landscape Services, Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

Weighing in favor of granting leave to amend, Miller's motion was timely filed. Trans

Union has not filed an answer, and the preliminary scheduling order has not been entered. Also in favor, the docket does not indicate that Miller engaged in any undue delay or bad faith, exhibited a dilatory motive, or repeatedly failed to cure deficiencies. Moreover, the action is in the early stages of litigation, thus there does not appear to be any prejudice to Trans Union should the motion be granted.

However, Trans Union argues that allowing the amendment would be futile. Since futility is a factor for the Court to consider, it "may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." Christman v. Walsh, 416 Fed. Appx. 841, 844 (11th Cir. 2011); Hatcher v. Alabama Dep't of Human Services, 747 Fed. Appx. 778 (11th Cir. Aug. 29, 2018) ("'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile,' such as 'when the complaint as amended is still subject to dismissal'....") (citations omitted).

To reach a decision, the Court must accept as true the well-pleaded factual allegations in the proposed amended complaint and construe them in the light most favorable to Miller. Estate of Faull by Jacobus v. McAfee, 727 Fed. Appx. 548, 549 (11th Cir. 2018) (citing Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1092 n.2, 1093-94 (11th Cir. 2017)). The Eleventh Circuit has explained as follows:

> "To state a claim for relief, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " … In assessing whether a complaint states a plausible claim, courts may consider documents attached to the complaint as part of the complaint. … A claim is facially plausible when the plaintiff pleads sufficient facts from which the district court may reasonably infer that the defendant is liable for the alleged misconduct. This standard requires that the plaintiff do more than "tender[ ] naked assertion[s] devoid of further factual enhancement" or plead facts that are "merely consistent with a defendant's liability." … Nevertheless, a plaintiff "need not prove his case

5

on the pleadings" in order to state a claim for relief, and a district court may not reject a well-pleaded complaint "simply because it strikes a savvy judge that actual proof of those facts is improbable."

Estate of Faull by Jacobus, 727 Fed. Appx. at 549 (citations omitted).

Trans Union argues that the proposed First Amended Complaint fails to assert an actionable FCRA claim regarding the PNC account. Trans Union argues, as it did in its motion to dismiss, that "[a]ny alleged inaccuracy related to the PNC account stems from a 'contractual dispute without a straightforward answer and one that Trans Union as a credit reporting agency (CRA) is not required to resolve." (doc. 14, p. 3). Trans Union argues that it had no duty to mark the PNC account in dispute (Id.). Trans Union also argues that Miller's alleged new and material facts "do not alter the underlying fact that the PNC account stems from a contractual dispute and that Trans Union had no duty to mark the account as in dispute." (Id.).

Miller argues that allowing the First Amended Complaint would not be futile because he properly alleges violations of the FCRA which are supported by the newly discovered evidence (doc. 15). Miller specifically cites the following:

> 1) Trans Union was instructed by PNC Bank, the furnisher of the information, to delete the account, but inexplicably, Trans Union continued to report the account. (Doc. 9-1, pp.7-8 ¶¶ 33-36; p. 40).
>
> 2) Trans Union received notice from Experian that the PNC tradeline was in dispute due to fraud or identity theft. (Doc. 9-1, p. 7 ¶ 29).
>
> 3) Trans Union failed to investigate or review and consider any documents reflecting the Plaintiff's dispute of identity theft, the transaction history, payment records, and Compliance Condition Code. (Doc. 9-1, p. 6 ¶ 24-28; and p.7 ¶ 31).
>
> 4) Trans Union completely ignored Plaintiff's dispute regarding NCC Brewbaker inquiry and has a policy of not investigating disputed inquiries. (Doc. 9-1, p. 9 ¶ 45-46; and p.10 ¶ 52).

(Doc. 15, p. 3).

Miller argues that his proposed First Amended Complaint properly alleges that Trans Union violated the FCRA "by failing to conduct a reasonable investigation of [Miller's] dispute and knowingly or recklessly reporting when PNC Bank, its *source*, as well as Experian, and Plaintiff instructed it to delete the fraudulent account." (Id., p. 4) (emphasis in original). Miller also argues that even if PNC had not instructed Trans Union to delete the account, the information necessary to verify the accuracy or inaccuracy of the PNC account was objectively and readily verifiable: Either he did or did not enter into an agreement with PNC to complete the sale, or he did or did not accept delivery of the truck from Dilligaf. From this, Miller argues that there is "no unresolved proposition of law in a contract to decide" (Id., p. 5-7).

In Rozov v. Bank of America NA, 2025 WL 1620921 (11th Cir. 2025), the Eleventh Circuit explained the analysis as follows:

> Section 1681e(b) of the FCRA requires consumer reporting agencies to "follow reasonable procedures" to ensure "maximum possible accuracy" of the information provided in consumer reports. 15 U.S.C. § 1681e(b). We have explained that a report achieves "maximum possible accuracy" if it is "factually true and also unlikely to lead to a misunderstanding." Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246, 1251 (11th Cir. 2020).
>
> In evaluating whether a report is misleading, "we look to the objectively reasonable interpretation of the report." Id. "If a report is so misleading that it is objectively likely to cause the intended user to take adverse action ... it is not maximally accurate." Id. But "the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading." Id.
>
> In addition to showing that reported information was either inaccurate or misleading, a plaintiff must also establish that the reported information is "objectively and readily verifiable." Holden v. Holiday Inn Club Vacations Inc., 98 F.4th 1359, 1368 (11th Cir. 2024). We have explained that "purely factual or transcription errors" or a "straightforward application of law to facts" constitute "objectively and readily verifiable" information. Id. at 1368–69. Conversely, allegedly inaccurate information that "stems from a ... dispute without a

> straightforward answer" does not. Id. at 1368.
>
> In sum, to succeed on their §§ 1681e(b)[2] and 1681i claims, Plaintiffs must show that the Early Warning consumer report contained 1) false or misleading information that was 2) objectively and readily verifiable by Early Warning.

2025 WL 1620921, at *2-3 (footnote in original) (affirming the district court and finding that "[b]ecause Plaintiffs' failure to satisfy either element would be fatal to the FCRA claim, we resolve the matter by affirming the district court on the second element without passing judgment as to the first element.").

Taking Miller's version of the facts in the First Amended Complaint as true, he has set forth sufficient facts to plausibly show that the alleged inaccuracies in his credit report were objectively and readily verifiable. The question of whether Miller executed the financing documents with PNC, or that the financing was the result of identity theft or fraud, is a question of fact. Likewise, whether Miller took possession of the truck is a question of fact. See Paulino v. Western Funding II, Inc., 737 F. Supp. 3d 1338, 1347 (S.D. Fla. 2024) ("Unlike Holden,[3] the disputed information does not turn on a contractual dispute without a straightforward answer. Ultimately, Plaintiff either did — or did not — execute the Disputed Loan. In other words, this case hinges on a matter of objectively verifiable fact. As such, it would be improper for the Court to resolve this case as a matter of law based upon the pleadings alone.").

---

[2] "U.S.C. § 1681i of the FCRA requires consumer reporting agencies to "conduct a reasonable reinvestigation to determine whether dispute information is inaccurate." Id. § 1681(a)(1)(A)." Rozov, 2025 WL 1620921, at *3, n. 3.

[3] In Holden, the Eleventh Circuit explained that Defendant Holiday Inn Club Vacations, Inc. had been sued by multiple plaintiffs regarding a default provision in the timeshare agreements. District courts were split on their interpretations of the provision. Some courts agreed with plaintiffs and found that it excused the plaintiffs' obligations to continue payment. Other found that it did not, and therefore, those non-paying plaintiffs were in default.

Also, the inaccurate information regarding the PNC account was objectively and readily verifiable as evidenced by PNC's providing notice to Trans Union to delete the account. The Eleventh Circuit has explained that a furnisher, like PNC, "stands in a far better position to make a thorough investigation … than a [consumer reporting agency] does." Holden, 98 F. 4th at 1368. Thus, Miller's allegation that Trans Union failed to delete the account after notice from PNC, if true, states a plausible claim for relief under the FCRA. See 15 U.S.C. § 1681s-2 (establishing that "furnishers of information to consumer reporting agencies" have a responsibility to "provide accurate information" and to "investigate ... disputed information").  And information that the PNC account was in dispute could be readily and objectively verified by review of Miller's Demand for Arbitration and Experian's notice to Trans Union that the PNC account was marked as in dispute for fraud and identity theft.

Accordingly, in the proposed First Amended Complaint, which adds new factual allegations based upon recently discovered evidence, Miller has plausibly alleged that Trans Union failed to ensure the "maximum possible accuracy" as required by 15 U.S.C. § 1681e(b) and failed to perform a "reasonable reinvestigation" under 15 U.S.C. § 1681i.

III. Conclusion

Since the Court has not ascertained any substantial reason to deny Miller's motion, the interests of justice indicate that it should be granted. See Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 757 (11th Cir. 1985) ("There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment").

**DONE** and **ORDERED** this 5th day of September 2025.

                              s / Kristi K DuBose
                              **KRISTI K. DuBOSE**
                              **UNITED STATES DISTRICT JUDGE**